**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARL F. SCHULTZ, JR., CINDY | : | CIVIL ACTION NO. 4:10-CV-0262 |
| SCHULTZ, MELISSA SCHULTZ, | : | |
| and BEAR & HUNTER, INC., | : | (Judge Conner) |
| t/d/b/a BIGDOGZ SPORTS BAR, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| HUGHESVILLE BOROUGH, | : | |
| RICHARD SHEARER, | : | |
| KURT V. HOCKMAN, and | : | |
| MICHAEL PALMETER, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

This is a civil rights action filed by plaintiffs Carl F. Schultz, Jr., Cindy

Schultz, Melissa Schultz, and Bear and Hunter, Inc., t/d/b/a BigDogz Sports Bar

against the Borough of Hughesville ("Hughesville"), former Chief of the Hughesville

Bureau of Police Richard Shearer ("Shearer"), former Officer Kurt V. Hockman

("Hockman") and Officer Michael Palmeter ("Palmeter") of the Hughesville Bureau

of Police (collectively, the "Officer Defendants"). Presently before the court is a

partial motion to dismiss (Doc. 28) filed pursuant to Federal Rule of Civil Procedure

12(b)(6) by defendants Hughesville Borough and Officer Palmeter. For the reasons

that follow, the court will grant the motion in part and deny it in part.

# I.    BACKGROUND

## A.    Statement of Facts[1]

The allegations in the complaint center around two establishments: BigDogz Sports Bar ("BigDogz"), a bar, and Valley Beverage, a wholesale beverage distributor, both located in Wolf Township, Lycoming County, Pennsylvania, on State Route 220 near the northern municipal boundary line of the Borough of Hughesville.  (Doc. 18 ¶¶ 11, 20).  Plaintiff Melissa Shultz ("Melissa") owns and manages Bear and Hunter, Inc., which, in turn, owns BigDogz.  (Id. ¶ 12).  Plaintiff Carl Shultz ("Carl"), the father of Melissa, owns Valley Beverage and, in addition, assists Melissa in running BigDogz.  (Id. ¶¶ 13, 20).  Plaintiff Cindy Shultz ("Cindy") is the spouse of Carl Shultz, however she is not involved in the operation of BigDogz or Valley Beverage.[2]  (See id. ¶ 3).

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint.  See infra Part II.  However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded.  Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

[2] Plaintiff Cindy Shultz bring various 42 U.S.C. § 1983 claims along with her husband, Carl Shultz.  (See Doc. 18 Counts I, II, III, IV, V, VI, VII, VIII).  However, a spouse has no standing under Section 1983 to raise "claims resting on violations of her husband's constitutional rights."  Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 281 (E.D. Pa. 2002).  There are no factual allegations involving Cindy Shultz, save for one paragraph which states in a conclusory fashion, "[a]s a direct and proximate cause of the actions of the Defendants more fully described herein, Plaintiff Cindy Shultz has been deprived of the services, society and comfort provided to her by Plaintiff Carl Shultz."  (Doc. 18 ¶ 110).  Plaintiff Cindy Shultz does not state any facts to support a consortium claim.  Indeed, there is nothing in the complaint to support any causes of action brought by Cindy Shultz and those claims will be dismissed with leave to amend.

To enter BigDogz, patrons must utilize a turn lane on State Route 220 and turn onto a private driveway which leads to the privately-owned parking lot of BigDogz. (Id. ¶ 14). To discourage patrons from entering Big Dogz, officers from the Hughesville Bureau of Police purportedly parked their cars in the parking lot of a convenience store located across from BigDogz, conducted traffic stops on State Route 220 in the turn lane leading to BigDogz, and patrolled the private parking lot of BigDogz. (Id. ¶¶ 15-18, 24). According to the amended complaint, the Hughesville Police Department conducted these stops and searches despite the lack of jurisdiction in Wolf Township. (Id. ¶ 19). Plaintiffs also allege that Hughesville Borough Police routinely parked in the lot of Valley Beverage and, on one occasion, blocked the entrance to the distributor. (Id. ¶¶ 20-22).

Under section 1121 of the Hughesville Borough Code, the Mayor "shall direct the time during which, the place where and the manner in which the Chief of Police and police officers shall perform their duties." (Id. ¶¶ 26, 27, 28-29). Plaintiffs aver that on several occasions Carl, and the state representative for Carl and Melissa contacted the Mayor of the Hughesville Borough to complain about the harassing conduct of the Hughesville Police Department. (Id. ¶ 32). The Mayor has acknowledged that "accountability [has been] a foreign concept within the police Department," and "officers and their friends have been resistant to change when he attempted to instill accountability." (Id. ¶¶ 125, 126).[3] Thus, the Mayor is aware of

_____

[3] The complaint does not indicate when these statements were made, or who was Mayor at the time. Taking the allegations in the complaint as true, the court

the unconstitutional practices of the Hughesville Police Department, but is unable to stop the improper law enforcement conduct. (<u>Id.</u> ¶ 127).

The crux of plaintiffs' complaint involves a June 6, 2009, traffic stop by Officer Palmeter of a motorcyclist who was attempting to enter the BigDogz parking lot. (<u>Id.</u> ¶ 35). Officer Palmeter activated the lights on his cruiser to initiate the vehicle stop, and subsequently radioed Officer Hockman for backup. (<u>Id.</u>) When Officer Hockman arrived, he too had activated the lights on his police cruiser. (<u>Id.</u> ¶ 36).

Carl Shultz exited BigDogz and asked Officers Hockman and Palmeter how long the traffic stop would be occupying the Route 220 turn lane because it was disrupting ingress into BigDogz. (<u>Id.</u> ¶ 38). This inquiry was apparently video recorded by Officer Hockman. (<u>Id.</u>) Officers Hockman and Palmeter instructed Carl to "back-up," a directive Carl followed, ultimately returning to the establishment. (<u>Id.</u> ¶ 39).

Minutes later, Officer Shearer, then Chief of Police of the Hughesville Borough Police Department, arrived at the scene. (<u>Id.</u> ¶ 40). Officer Hockman informed Shearer that Carl had interfered with the investigation of the traffic stop. (<u>Id.</u> ¶ 41). Officers Hockman and Shearer then decided to record a conversation with Carl Shultz for use in prosecution of criminal charges against him. (<u>Id.</u> ¶¶ 42, 43, 45). Officers Hockman and Shearer pressured Carl to leave the bar and the

will assume they were made at a time relevant to the other allegations in the complaint.

4

three allegedly had a conversation that, plaintiffs aver, was recorded in violation of the Wiretapping and Electronic Surveillance Control Act, 18 PA. CONS. STAT. § 5701 *et seq.* (Doc. 18 ¶ 47).

Plaintiffs also claim that Officers Hockman and Shearer conspired to submit a false report to the Pennsylvania Liquor Control Board ("PLCB") in which they stated that Carl had "interfered with a traffic stop and became belligerent with the police officer," and that Carl ordered the police off the property (Id. ¶¶ 48, 49, 50). Plaintiffs allege that Hockman and Shearer filed the report to induce PLCB investigations of both BigDogz and Valley Beverage. According to the amended complaint, PLCB subsequently pursued multiple investigations of the businesses. (Id. ¶¶ 48, 51).

On June 12, 2009, Officer Shearer filed a criminal complaint and affidavit of probable cause, charging Carl with one count of Obstruction of Law or Other Governmental Function, 18 PA. CONS. STAT. § 5101, and one count of Disorderly Conduct, 18 PA. CONS. STAT. § 5503. (Doc. 18 ¶ 54; id. Ex. A). The charges were based upon Carl's alleged conduct during the June 6th traffic stop of the motorcyclist. In the affidavit of probable cause Officer Shearer stated that Carl interfered with the officers' investigation by attempting to force Officers Palmeter and Hockman to move their vehicles. (Id. ¶¶ 57, 58; id. Ex. A, Doc. 18-2). As a result of Carl's conduct, Officer Shearer asserted that Officer Palmeter was compelled to turn his back on a suspect armed with a switchblade. (Id. ¶ 59; id. Ex. A). Plaintiffs

5

allege that these charges were based on facts which the officers knew were false. (Id. ¶¶ 55, 61).

On June 12, 2009, a Magisterial District Judge issued a Fingerprint Order directing Carl to report to the Hughesville Police Department no later then June 30, 2009. (Id. ¶ 63; id. Ex. B). When Carl arrived on June 30, 2009, Officer Hockman purportedly accused him of providing a false social security number, resulting in a delay in the fingerprinting process. (Id. ¶¶ 64, 65). Plaintiffs allege that subsequent to the fingerprinting, Officers Hockman and Shearer conspired to contact the Williamsport Sun-Gazette to "encourage" the newspaper to print a false article about Carl and BigDogz. (Id. ¶ 67; id. Ex. C). On July 2, 2009, the Sun-Gazette printed an article that described two separate incidents at BigDogz.[4] The article also noted that Carl was facing charges for obstructing the administration of law and disorderly conduct. (Id. Ex. C).

On September 17, 2009, a preliminary hearing on the charges brought against Carl was held before Magisterial District Justice C. Roger McRae ("Justice McRae"). (Id. ¶ 73). Officer Hockman, Melissa, and the attorney representing Carl all recorded the preliminary hearing. (Id. ¶¶ 78, 79). During the hearing, the Officer Defendants claimed that the acts of Melissa and Carl's attorney in tape-recording

---

[4] The article describes a second incident which occurred on April 20, 2009. Apparently, BigDogz employees asked an intoxicated patron to leave the bar and, thereafter, the patron became unruly. ( Doc. 18, Ex. C). When police arrived, the patron had already caused damage to two vehicles and had urinated on the door of BigDogz. (Id.) The patron attempted to drive his vehicle out of the parking lot, but was stopped after a short distance. (Id.)

the hearing violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 PA. CONS. STAT. § 5701 et seq. (Doc. 18 ¶ 80). According to the amended complaint, Officers Hockman and Shearer urged the Lycoming County District Attorney to press charges against Carl's attorney and Melissa, but no such charges were ever brought. (Id. ¶¶ 81, 83). Plaintiffs allege that these efforts were acts of additional retaliation by Officers Hockman and Shearer. (Id.)

On November 12, 2009, Carl filed a Petition for Habeas Corpus, requesting that the criminal charges against him be dismissed. (Id. ¶ 97). Prior to the commencement of the hearing, scheduled for January 7, 2010, the Lycoming County District Attorney's Office reviewed the video recording from the evening of June 6, 2009. (Id. ¶¶ 98, 99). On January 11, 2010, the Lycoming County District Attorney's Office dismissed the charges for unknown reasons. (Id. ¶ 100). Plaintiffs allege that the harassing conduct of Hughesville police has continued to this date. (Id. ¶¶ 103-108).

**B.** **Procedural History**

On February 3, 2010, plaintiffs filed a complaint in this court pursuant to 42 U.S.C. § 1983. (See Doc. 1). Plaintiffs filed an amended complaint on May 5, 2010, alleging First, Fourth, and Fourteenth Amendment claims under the federal Constitution as well as various state law claims for malicious prosecution, intentional infliction of emotional distress, defamation, invasion of privacy, and violation of the Wiretapping and Electronic Surveillance Control Act, 18 PA. CONS. STAT. § 5701 et seq. (Doc. 18). As a direct and proximate cause of the defendants'

actions, Carl and Melissa claim to have suffered "humiliation, emotional distress, psychological injury, injury to reputation, and monetary loss." (Id. ¶¶ 109, 111). Cindy claims she "has been deprived of the services, society and comfort" of Carl. (Id. ¶ 110). Finally, plaintiffs allege that BigDogz has suffered from injury to reputation and monetary loss. (Id. ¶ 112). On June 18, 2010, Officer Palmeter and Hughesville Borough filed a motion to dismiss. (See Doc. 28). The motion has been fully briefed and is now ripe for disposition.

## II. <u>**STANDARD OF REVIEW**</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009) (quoting <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)); <u>see also</u> <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

8

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a two-step inquiry. In the first step, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009) (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. at ---, 129 S. Ct. at 1949. When the complaint fails to establish defendant liability, however, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III. DISCUSSION

Presently before the court is a motion to dismiss filed by the Borough of Hughesville and Officer Palmeter. Plaintiffs bring claims under 42 U.S.C. § 1983 for

malicious prosecution, and violations of the First Amendment, as well as pendent state law claims for malicious prosecution and intentional infliction of emotional distress against Officer Palmeter.[5]  Plaintiffs bring claims under 42 U.S.C. § 1983 for malicious prosecution, false arrest and violations of the First and Fourteenth Amendments against the Borough of Hughesville.  The court will address the claims against each Defendant *seriatim*.

## A.       Claims Against Officer Palmeter

Plaintiffs bring a First Amendment and a Fourth Amendment claim against Officer Palmeter pursuant to 42 U.S.C. § 1983.  Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials.  See 42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

## 1.       Section 1983 Malicious Prosecution

To prevail on Fourth Amendment malicious prosecution claim in a § 1983 action, Carl must show: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding terminated in Carl's favor; (3) the proceeding was initiated without probable cause; (4) defendants acted maliciously or for a purpose other than bringing Carl to justice; and (5) Carl suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding.  McKenna v.

_____

[5]  The court may exercise jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

<u>City of Philadelphia</u>, 582 F.3d 447, 461 (3d Cir. 2009) (citing <u>Estate of Smith v.</u>

<u>Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003).  A prosecution  instituted without

probable cause does not, by itself, constitute a deprivation of a constitutional right;

it is instead the deprivation of constitutional rights that accompany the

prosecution— such as the constitutional right to be free from unwarranted

seizures—that provides the basis for a Fourth Amendment malicious prosecution

claim.  <u>Dibella v. Borough of Beechwood</u>, 407 F.3d 599, 602-03 (3d Cir. 2005) (citing

<u>Gallo v. City of Philadelphia</u>, 161 F.3d 217 (3d Cir. 1998).  However, mere attendance

at trial is insufficient to constitute a Fourth Amendment seizure.  <u>Id.</u> at 603.

The Third Circuit's holding in <u>Dibella v. Borough of Beachwood</u>, 407 F.3d

599, is instructive as to the seizure requirement.  In <u>Dibella</u>, the state initiated

criminal proceedings against the plaintiffs, but the proceedings ended in plaintiffs'

favor when the charges were dismissed on appeal.  <u>Id.</u>  at 601.  However, the Third

Circuit concluded that the plaintiffs failed to establish that they were "seized" for

Fourth Amendment purposes—plaintiffs were only issued a summons, they were

never arrested; they never posted bail; they were free to travel; they were not

required to report to pretrial services; and, the only time their liberty was restricted

was during the Municipal Court trial.  <u>Id.</u> at 603.

In the instant matter Carl[6] was not taken into custody or arrested. He was never handcuffed or placed in a holding cell. After Justice McRae determined at the preliminary hearing that the charges would be bound over, Carl was released on unsecured bail. He was given three weeks within which to report to be fingerprinted. The only additional restrictions on Carl were that he notify the court of any change in address and that he refrain from contact "with any potential Commonwealth witnesses." (Doc. 18, Ex. E at 1). The sole allegation with any merit to establish the seizure requirement, is Carl's contention that during the fingerprinting process, he was detained for an extended period of time due to issues with his social security number. Although inconvenient, this does not rise to the level of a Fourth Amendment "seizure." Moreover, plaintiffs have not even alleged that Officer Palmeter was personally involved in the fingerprinting procedure. As such, Plaintiffs have failed to state a valid § 1983 malicious prosecution claim against Officer Palmeter.

At this juncture, plaintiffs have already amended their complaint once and have failed to allege any act by Officer Palmeter which would constitute a Fourth Amendment "seizure." Considering that this is an essential element of a malicious prosecution claim, the claim will be dismissed with prejudice as amendment would be futile.

---

[6] Although this claim is brought by both Carl and Cindy, the Court fails to see how, taking all factual allegations as true, a fact finder could determine that Cindy was in any way maliciously prosecuted as no charges were brought against her and she had no contact with any state actors in this case.

## 2.     **State Law Malicious Prosecution**

In Count IX, Plaintiffs assert an additional claim of malicious prosecution against the Officer Defendants. The court construes this claim as a state law cause of action for malicious prosecution. The essential elements require that the defendant: "(1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." Corrigan v. Cent. Tax Bureau of Pa., 828 A.2d 502, 505 (Pa. Commw. 2003).

Unlike its § 1983 counterpart, a state malicious prosecution claim lacks the additional requirement of a deprivation of a constitutional right. The amended complaint alleges that Officer Palmeter conspired with the other Officer Defendants to file false charges. (Doc. 18 ¶¶ 53, 61). Although Officer Palmeter was not personally responsible for filing the charges, plaintiffs allege that he nonetheless "initiated" the charges by providing false information to Officer Shearer. (Doc. 35, at 6-8); See Cameron v. City of Philadelphia, Civ. A. No. 90-2928, 1991 WL 218433 at *2 (E.D. Pa. 1991) (allowing case to proceed against Defendant Officer although she was not the one who filed the criminal charges due to the fact that she conspired

with other officers to have the charges filed).[7]  Accepting these allegations as true,

Plaintiffs have properly alleged a Pennsylvania malicious prosecution claim.

**3.** **<u>First Amendment</u>**

Count V is construed as a First Amendment retaliation claim against Officer

Palmeter.  To prevail on such a claim, a plaintiff must prove: "(1) that he engaged in

a constitutionally-protected activity; (2) that the government responded with

retaliation; and (3) that the protected activity caused the retaliation."  <u>Miller v.</u>

<u>Mitchell</u>, 598 F.3d 139, 147 (3d Cir. 2010) (citing <u>Eichenlaub v. Twp. of Ind.</u>, 385 F.3d

274 (3d Cir. 2004)).  The conduct of the governmental agent or body must be

sufficient "to deter a person of ordinary firmness from exercising [their] First

Amendment rights."  <u>McKee v. Hart</u>, 436 F.3d 165, 170 (3d Cir. 2006) (citing <u>Suppan</u>

<u>v. Dadonna</u>, 203 F.3d 228 (3d Cir. 2000)).  The "effect of alleged retaliation on

protected activities need not be great in order to be actionable, but must be more

than *de minimus*."  <u>Kougher v. Burd</u>, 274 Fed. App'x 197, 200 (3d Cir. 2008) (citing

<u>McKee</u>, 436 F.3d 165, and expanding this principle beyond the employment context

to actions by governmental actors on private citizens).

In § 1983 claims, "liability cannot be predicated solely on the operation of

*respondeat superior*."  <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).  It is

---

[7]  Plaintiffs rely heavily on the <u>Cameron</u> case in supporting this claim.  The court in <u>Cameron</u> confronted a summary judgment motion, and the record contained an affidavit from the officer in which she admitted to conspiring to file false charges.  In the instant matter, discovery is ongoing and Officer Palmeter has not admitted to any involvement in the filing of charges against Carl.

incumbent upon the plaintiffs to establish that Officer Palmeter had "personal involvement" in the deprivation of the plaintiffs' rights, which can be shown by "allegations of personal direction or of actual knowledge and acquiescence." Id. Plaintiffs must make such allegations with "appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

In the instant matter, plaintiffs generally allege that, after petitioning the Mayor of Hughesville and the Board of Supervisors of Wolf Township for redress of their grievances, and after the filing of the initial complaint in this matter, the defendants engaged in numerous acts of retaliation. (See Doc. 18 ¶¶ 149-158). Defendants purportedly conspired to file and did file criminal charges against Carl (see id. ¶¶ 152-153); defendants conspired to provide false or misleading testimony to Justice McRae and failed to disclose an exculpatory video recording (id. ¶ 154); they attempted to file criminal charges against Melissa for her attendance and tape recording of the preliminary hearing (id. ¶ 156), and defendants allegedly continued to harass plaintiffs subsequent to initiation of this litigation. (Id. ¶¶ 103-106).

The Shultz's make few specific allegations against Officer Palmeter: he initiated a valid traffic stop outside BigDogz, he conspired with the Officer Defendants to make the purportedly false allegations in Officer Shearer's affidavit of probable cause, and he engaged in a the one-time use of a surveillance camera at BigDogz. (Doc. 18 ¶¶ 35, 90). Though thread bare, at this stage in the litigation, the court finds the allegations sufficient to state a claim for retaliation.

### 3.   **Intentional Infliction of Emotional Distress**

To succeed in a cause of action for IIED, the Shultz's must establish the following elements: (1) Officer Palmeter's conduct was intentional or reckless, (2) Officer Palmeter's conduct was extreme and outrageous, (3) Officer Palmeter's conduct caused emotional distress, and (4) the resultant emotional distress was severe.[8] <u>Taylor v. Albert Einstein Med. Ctr.</u>, 754 A.2d 650, 652 (Pa. 2000); <u>Hoy v. Angelone</u>, 691 A.2d 476, 482 (Pa. 1997); <u>see</u> <u>also</u> <u>Brufett v. Warner Commc'ns, Inc.</u>, 692 F.2d 910, 914 (3d Cir. 1982); <u>S.F. ex rel. Freeman</u>, 2008 WL 4680580 at *7.

"The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor," <u>Kazatsky v. King David Mem'l Park, Inc.</u>, 527 A.2d 988, 991 (Pa. 1987), and 'it is for the court to determine in the first instance' whether the element of outrageousness has been met. <u>Swisher v. Pitz</u>, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005) (quoting <u>Johnson v. Caparelli</u>, 625 A.2d 668, 671 (Pa. Super. Ct. 1993)). Alleged misconduct must be so extreme "as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society. . . . the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" <u>Strickland v. University of Scranton</u>, 700 A.2d 979,

---

[8] The Pennsylvania Supreme Court has not formally adopted the tort of IIED. However, the court has indicated that if it were to recognize such a cause of action, a plaintiff would have to plead and prove these elements. <u>See</u> <u>Taylor v. Albert Einstein Med. Ctr.</u>, 754 A.2d 650, 652 (Pa. 2000) (citing RESTATEMENT (SECOND) OF TORTS § 46 (Outrageous Conduct Causing Severe Emotional Distress)).

987 (Pa. Super. Ct. 1997) (quoting <u>Small v. Juniata College</u>, 682 A.2d 350, 355 (Pa. Super. Ct. 1996)) (citations and quotations omitted).[9]  Recovery under this cause of action has been extremely limited. <u>See</u> <u>Salerno v. Phila. Newspapers Inc.</u>, 546 A.2d 1168, 1172 (Pa. Super. 1988)

In the instant matter, the Shultz's allege that Officer Palmeter explicitly discussed false allegations to be included in the affidavit of probable cause (Doc. 18 ¶¶ 53, 61) and that his testimony at the preliminary hearing was "substantially different from the facts ultimately revealed by the video/audio tape." (<u>Id.</u> ¶¶ 74, 76). The Shultz's aver more generally that "[t]he Defendants' engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress to Plaintiffs."  (<u>Id.</u> ¶ 172).  These allegations, taken as true, describe sufficiently outrageous conduct to support the claim of intentional infliction of emotional distress.

### B. <u>Claims Against Borough of Hughesville</u>

Plaintiffs allege that the Borough of Hughesville had a policy, practice or custom of supporting the police department's purportedly unconstitutional acts, thus subjecting the Borough to liability for Fourth Amendment malicious

_____

[9] At the motion to dismiss stage it is sufficient that the Shultz's have alleged emotional distress.  (Doc. 18 ¶¶ 109-111, 172); <u>see</u> <u>Hall v. Raech</u>, No. 08-5020, 2009 WL 811503 at *7 (E.D. Pa. 2009) (allowing IIED claim to survive motion to dismiss but stating that plaintiff will eventually need to present competent medical evidence of emotion distress to support the claim).  Ultimately, the Shultz's must provide competent medical evidence to prove the existence of emotional distress. <u>Kazatsky</u>, 527 A.2d at 995.

prosecution and false arrest, First Amendment retaliation, and Fourteenth

Amendment substantive due process violations.  (Doc. 18, Counts II, IV, VI & VIII).

It is well-settled that municipalities and other local government entities may not be

held liable under § 1983 for the acts of their employees under a theory of *respondeat*

*superior* or vicarious liability.  See Monell v. Dep't of Soc. Servs. of the City of New

York, 436 U.S. 658 (1978).  A municipality may, however, be held liable if the

plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's

injury."  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436

U.S. at 694.

A policy is an official proclamation or edict of a municipality.  Beck v. City of

Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Phila., 895

F.2d 1469, 1480 (3d Cir. 1990) (citations omitted); see also Watson v. Abington Twp.,

478 F.3d 144, 155 (3d Cir. 2007) (reiterating that municipal policy exists when an

individual with final decisionmaking authority "issues an official proclamation,

policy, or edict").  "A custom is an act 'that has not been formally approved by an

appropriate decisionmaker,' but that is 'so widespread as to have the force of law."

Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting

Brown, 520 U.S. at 404).  A custom may be established by proving knowledge of,

and acquiescence to, a practice.  Watson v. Abington Twp., 478 F.3d 144, 156 (3d Cir.

2007) (internal citations omitted).  Furthermore, the policy or custom upon which a

plaintiff bases a § 1983 claim must emanate from individuals with the authority to

promulgate municipal standards in the relevant area.  See LaVerdure v. County of

18

Montgomery, 324 F.3d 123, 126 (3d Cir 2003) ("To be a policymaker for § 1983 purposes, an official must have *final* policymaking authority.").

Courts have noted three scenarios in which a government employee's actions may be deemed to be the result of a policy or custom of the entity that subjects the municipality to § 1983 liability: (1) when an appropriate officer or entity promulgates a statement of policy and the employee's act is an implementation of that policy; (2) when the act of the policymaker violates federal law; and (3) when a policymaker fails to act affirmatively despite the obvious need for action to control agents of the government. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003). The instant matter implicates the third scenario. Plaintiffs aver that the Borough, specifically the Mayor, knew of and acquiesced in the alleged unconstitutional actions of the Borough Police Department and its officers.

In essence, plaintiffs are alleging that the Borough, and the Mayor specifically, failed to train its police officers regarding individuals' First, Fourth, and Fourteenth Amendment constitutional rights. Failure to train is a valid basis for § 1983 liability only when such failure amounts to deliberate indifference. Beck, 89 F.3d at 971-72 (noting the adoption of the deliberate indifference standard in other policy/custom contexts outside the area of police training) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)); Young v. Pleasant Valley Sch. Dist., No. 3:07-cv-854, 2008 WL 417739 at *5 (M.D. Pa. Feb 13, 2008).

To succeed, plaintiffs must also establish that the deficiency in training is related to the ultimate injury. City of Canton, 489 U.S. at 391. In other words, the

19

acquiesence, encouragement or condonation must contribute to the injury.  Beck,

89 F.3d at 972 (citing Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)).  Thus,

plaintiffs must demonstrate a "plausible nexus" or "affirmative link" between the

custom and the deprivation of constitutional rights.  Bielevicz, 915 F.2d at 850.  'A

sufficiently close causal link between . . . a known but uncorrected custom or usage

and a specific violation is established if occurrence of the specific violation was

made reasonably probable by permitted continuation of the custom.'  Id. at 851

(quoting Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1988) and adopting this

formulation of the causation requirement).  A failure to train amounts to deliberate

indifference when the failure to train has caused a pattern of violations.  Kelly v.

Borough of Carlisle, ---F.3d--- (3d Cir. 2010), 2010 WL 3835209 at *15

        In the instant matter, plaintiffs highlight a series of instances, without citing

dates or names of individuals involved, when they believe the Borough police

department acted unreasonably when conducting searches and seizures.[10]

Plaintiffs claim that the Borough, and specifically the Mayor, was cognizant of this

conduct and acquiesced in it, thereby creating a policy or custom.  (Doc. 18 ¶¶ 27-

30).  Plaintiffs further allege contemporary knowledge by the Mayor of police

violations of plaintiffs' rights, accompanied by inaction by the Borough rising to the

---

[10]  The complaint outlines incidents of misconduct by Officers Hockman and
Shearer, specifically, that Officer Shearer once confiscated personal property from
a business owner without his permission, and confiscated firearms from an
individual, violating these private individuals constitutional rights.  (Doc. 18 ¶¶ 129,
130).  In addition, plaintiffs allege Officers Shearer and Hockman once seized cell
phones from teenage girls.  (Compl. ¶ 131).

level of deliberate indifference. (Doc. 18 ¶¶ 124-127, 133-138). Plaintiffs allege that on several occasions the plaintiffs and the state representative for the plaintiffs contacted the Mayor and complained about the harassing conduct of the police department. (Id. ¶ 32). Furthermore, plaintiffs call attention to the Mayor's statement that "accountability was a foreign concept with the [police] department." (Doc. 18 ¶ 125; see also Doc. 35, at 13). In addition, plaintiffs claim that because the Mayor had access to the reports and other information which ultimately led to charges being filed against Carl, and because the charges were filed six days after the incident actually took place, "[i]t is reasonable to infer that the mayor reviewed the reports and tapes and was intimately involved with Mr. Shultz's arrest since he took the unusual step of attending a preliminary hearing to support his officers." (Id.; see also Doc. 18 ¶¶ 133, 134).

At this juncture in the litigation, accepting the factual allegations as true, plaintiffs have adequately alleged customs of the Borough of Hughesville. Plaintiffs have alleged specific facts of prior conduct by Borough Police violative of individuals' Fourth Amendment rights, and have alleged continuing retaliation in violation of plaintiffs' First Amendment rights subsequent to complaints to the Mayor and the filing of the instant litigation.

However, the court finds that plaintiffs have failed to state a municipal liability claim against the Borough under the Fourteenth Amendment. Plaintiffs allege no facts to support a substantive due process violation and only generally aver in their brief in opposition to the motion to dismiss that "[t]he assault by

Hughesville Borough against the Plaintiffs, which the Borough has permitted to continue to this day, shocks the conscience." (Doc. 35, at 21). This general averment is insufficient to state a Fourteenth Amendment substantive due process claim against the municipality. This Fourteenth Amendment substantive due process count against the Borough will therefore be dismissed.

IV. **Conclusion**

For the foregoing reasons, the court will grant in part and deny in part the motion (Doc. 28) to dismiss certain claims pursuant to FED. R. CIV. P. 12(b)(6) filed by Officer Palmeter and the Borough of Hughesville. The court will grant Officer Palmeter's motion to dismiss the § 1983 claim of malicious prosecution, but will deny the motion to dismiss the remaining claims against him. The court will grant the motion to dismiss the Fourteenth Amendment substantive due process claim against the Borough, but will deny the motion as to the Borough in all other respects.

An appropriate order follows.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     December 13, 2010

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARL F. SCHULTZ, JR., CINDY       :    **CIVIL ACTION NO. 4:10-CV-0262**
SCHULTZ, MELISSA SCHULTZ,      :
and BEAR & HUNTER, INC.,        :    **(Judge Conner)**
t/d/b/a BIGDOGZ SPORTS BAR,    :
                                    :
            **Plaintiffs**     :
                                    :
      **v.**                   :
                                    :
**HUGHESVILLE BOROUGH,**       :
**RICHARD SHEARER,**            :
**KURT V. HOCKMAN, and**       :
**MICHAEL PALMETER,**        :
                                    :
          **Defendants**   :

## <u>ORDER</u>

AND NOW, this 13th day of December, 2010, upon consideration of the

motion to dismiss (Docs. 28), filed by defendant Palmeter and the Borough of

Hughesville, and for the reasons set forth in the accompanying memorandum, it is

hereby ORDERED that:

    1.    The motion is GRANTED in part as follows:

        a.    Count I is dismissed with respect to defendant Palmeter

        b.    Count VIII against the Borough of Hughesville is dismissed

        c.    Counts I, II, IV, V, VI, VIII, IX, and X are dismissed with respect to defendant Palmeter and the Borough of Hughesville to the extent that they are brought by plaintiff Cindy Shultz.

    2.    The motion is DENIED in all other respects.

3.     Plaintiffs are GRANTED leave to file, within twenty (20) days of the date of this order, an amended complaint with respect to Count VIII against the Borough of Hugesville, and all counts alleged by plaintiff Cindy Shultz.   If no such amended pleading is filed, the instant matter will proceed on all remaining claims.


                                           S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge